**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, ex rel. Thomas Horne, Attorney General,<br><br>  Plaintiff,<br><br>vs.<br><br>Countrywide Financial Corporation, a Delaware corporation, et. al,<br><br>  Defendants. | No. CV-11-131-PHX-FJM<br><br>**ORDER** |

The court has before it the State's motion to remand (doc. 16), defendants' response (doc. 22), and the State's reply (doc. 23).

**I. Background**

The State of Arizona, through its Attorney General, filed this action in the Superior Court of Arizona in Maricopa County. Defendants timely removed the action, asserting three possible bases: (1) the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453; (2) federal question jurisdiction, 28 U.S.C. § 1331; and (3) bankruptcy jurisdiction, 28 U.S.C. §§ 1334(b), 1452. The State now moves to remand.

The complaint alleges two causes of action: 1) violation of a state Consent Judgment, and 2) violations of the Arizona Consumer Fraud Statute ("CFA"), A.R.S. § 44-1521, et. seq. In 2009, the State and some of the defendants (four of the seven) resolved claims of consumer fraud involving Countrywide's mortgage business by entering into a consent

1  judgment. Complaint, ex. A. The State's first cause of action alleges that defendants failed
2  to abide by their commitments in the Consent Judgment to defer foreclosures while consumer
3  modification applications were under evaluation and to timely offer loan modifications to
4  qualified consumers. Complaint ¶ 20. The second claim alleges that Bank of America[1] has
5  violated, and continues to violate, the CFA by deceiving Arizona borrowers about its
6  mortgage modification program, including whether borrowers' interests would be foreclosed
7  while in the modification process and whether and when borrowers might receive loan
8  modifications. Complaint ¶¶ 79-110. The State seeks injunctive relief, civil penalties, and
9  restitution.

10  Defendants may remove a state court action only if it might have been brought here
11  originally. 28 U.S.C. § 1441(a). We strictly construe the removal statute and reject
12  jurisdiction if there is any doubt as to whether removal is proper. Duncan v. Stuetzle, 76
13  F.3d 1480, 1485 (9th Cir. 1996). The party seeking removal bears the burden of proof.
14  Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006).

15  Before addressing each jurisdictional basis we note at the outset that the state court
16  is the more appropriate forum to enforce its own judgment. The parties agreed in the
17  Consent Judgment that the Superior Court would have jurisdiction over any action for
18  "enforcement of any provision. . . and for sanctions and other remedies for any violations."
19  Complaint at 10, 34, Consent Judgment ¶¶ III.2.3, III.10.4. We think it obvious that the state
20  court should consider enforcement of its own judgment. See Taylor v. U.S., 181 F.3d 1017,
21  1033 (9th Cir. 1999) (stating that a supervising tribunal should enforce its own consent
22  decree). Nevertheless, because not all the defendants were parties to the Consent Judgment,
23  and because this action includes additional claims, we consider defendants' contentions.

## II. CAFA Jurisdiction

25  Defendants' first basis for removal is the Class Action Fairness Act, 28 U.S.C. §
26  1332(d). The State denies that removal is proper under CAFA because CAFA does not apply

---

[1] Bank of America is Countrywide's parent company. Complaint ¶¶ 8-9.

- 2 -

to state *parens patriae* actions. Even if CAFA applied to such actions, the State argues that minimal diversity does not exist because the State is the real party in interest and it is not a citizen for diversity purposes. Defendants disagree relying on the legislative history of CAFA[2], one Fifth Circuit case, and a handful of other district court cases holding that similar actions are properly removable under CAFA.[3] Moreover, defendants assert that because the State seeks restitution, the borrowers who will receive the restitution are the real parties in interest. We need not decide the broad question of CAFA's applicability to any *parens patriae* action. We do, however, conclude that this is a proper *parens patriae* suit and that the State is the real party in interest.

CAFA grants the district court original jurisdiction over any civil case where, among other things, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and minimal diversity exists. § 1332(d). The parties only dispute the existence of minimal diversity.

In a *parens patriae* action the state asserts a claim based on "a set of interests that the State has in the well being of its populace." Alfred L. Snapp & Son v. Puerto Rico, 458 U.S. 592, 602, 102 S.Ct. 3260, 3266 (1982). It must articulate a quasi-sovereign interest apart from the interest of particular parties. Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc., 256 F.3d 879, 885 (9th Cir. 2001) (internal citations omitted). A state's interest

---

[2] Specifically, defendants point to a failed amendment under CAFA to explicitly exempt any attorney general action from the reach of § 1332(d). See Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749 at 752-54 (D. N.J. 2005) (surveying CAFA's legislative history and concluding that it was not Congress' intent to encroach on the states' authority to bring *parens patriae* suits).

[3] Defendants rely primarily on the only circuit court decision on point. See Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418 (5th Cir. 2008). In Caldwell, the State of Louisiana brought an antitrust case alleging that defendants conspired to suppress the value of insurance claims. Id. at 422. Louisiana sought treble damages on behalf of policyholders. Id. A divided court held that although the case was filed as a *parens patriae* action, it was really a mass action because the policyholders were the real parties in interest for the claim for treble damages. Id. at 429-30.

1   in the "health and well-being-both physical and economic-of its residents in general" is a
2   quasi-sovereign interest. Snapp, 458 U.S. at 607, 102 S.Ct. at 3268. If the state is the real
3   party in interest, then diversity jurisdiction cannot exist because a state is not a citizen for
4   diversity purposes. Dyack v. N. Mariana Islands, 317 F.3d 1030, 1037 (9th Cir. 2003).

5         To identify the real party in interest, we evaluate the complaint as a whole, rather than
6   claim-by-claim. See In re New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590 (1921) (stating
7   that the real party in interest is determined by looking at "the essential nature and effect of
8   the proceeding, as it appears from the entire record"); See also Ohio v. GMAC Mortg., __
9   F. Supp. 2d __, 2011 WL 124187, * 3 (N.D. Ohio 2011) (stating that the majority of circuit
10  and district courts evaluate the whole complaint). We find this approach consistent with
11  CAFA and the rule that removal statutes are to be strictly construed. See Missouri, ex. rel.
12  Koster v. Portfolio Recovery Ass., 686 F. Supp. 2d 942, 945 (E.D. Miss. 2010). Here, the
13  Complaint alleges violations of the CFA and the Consent Judgment. The CFA authorizes
14  the Attorney General to seek an injunction to prohibit violations, A.R.S. § 44-1528(A), to act
15  "in the name of the state" and recover civil penalties for violations of orders, § 44-1532. It
16  also authorizes the Attorney General to seek restitution for persons affected by the illegal
17  acts. § 44-1528(2). Defendants argue that it is the State's decision to seek restitution,
18  ultimately payable to private parties, that renders it a nominal party.

19        Contrary to defendants' assertions, the Complaint does not seek restitution on behalf
20  of a discrete group of individuals. It simply asks for an order that "Defendants [ ] pay
21  restitution to consumers pursuant to A.R.S. § 44-1528 and Paragraph III.10.4 of the Consent
22  Judgment." Complaint at 34, 2. This is distinguishable from the relief sought in Caldwell
23  where the State was seeking treble damages on behalf of a small group of insurance
24  policyholders. 536 F.3d at 430; see also, West Virginia, ex. rel. McGraw v. Comcast Corp.,
25  705 F. Supp. 2d 441 (E.D. Pa. 2010)(seeking treble damages on behalf of premium cable
26  subscribers). The Fifth Circuit specifically found that because the Louisiana statute made
27  clear that individuals had the right to enforce the provision for treble damages, they were the
28  real parties in interest. Id. at 429-30. That is not the case here. The CFA does not provide

for an express private right of action.[4]  Moreover, simply because some individual citizens may recover restitution does not render those individuals the real parties in interest. See Connecticut v. Moody's Corp., No. 3:10cv546, 2011 WL 63905, * 3 (D. Conn. Jan. 5, 2011) (citing various cases holding that merely because private parties may benefit monetarily does not make them the real parties in interest).  The State has a strong public policy interest in pursuing restitution because "restitution will benefit the public welfare by penalizing past unlawful conduct and deterring future wrongdoing." City & County of San Francisco v. PG&E Corp., 433 F.3d 1115, 1124 (9th Cir. 2006).

We agree with the State that it has a quasi-sovereign interest in "protecting the integrity of the residential mortgage loan business" and preventing consumer fraud in loan modifications and foreclosures. MTR at 5. Furthermore, the State has an interest in the enforcement of its own state court judgment and its consumer fraud laws. See e.g TFT-LCD Antitrust Litig., No. C 07-1827, 2001 WL 560593, *5 (N.D. Cal. Feb. 15, 2011) (holding that both California and Washington were the real parties in interest in an action seeking damages on behalf of the state and consumers for violations of consumer protection laws). The State's interest also is evidenced by its statutory authority to sue for each kind of relief sought. See Moody, 2011 WL 63905 at * 3.  This relief not only will benefit those borrowers already in foreclosure, but it will protect future borrowers from defendants' fraudulent behavior. That some private parties may receive restitution does not negate the State's substantial interest or render the entire action removable.[5]

---

[4] We note that one Arizona case has held that the CFA implicitly allows for a private right of action. See Sellinger v. Freeway Mobile Homes Sales, Inc., 110 Ariz. 573, 521 P.2d 1119, 1122 (1974). We refuse to infer from this that individuals are the real parties in interest when the CFA explicitly authorizes the Attorney General to sue on behalf of the state.

[5] Defendants also argue that the CFA defines borrowers as persons in interest.  This is incorrect. The CFA does not define borrowers as persons in interest, it simply authorizes restitution payments to be made to "any person in interest" who was hurt by the unlawful practice. § 44-1528(A)(2). The statute expressly states that the Attorney General is suing on behalf of the state, not individuals.  § 44-1528(A).

1       Even if the State were not the real party in interest, this is not a class action or mass
2  action under CAFA.  Jurisdiction under CAFA exists only if the case is a "class action" or
3  a "mass action." A "class action" is "any civil action filed under Rule 23 of the Federal Rules
4  of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action
5  to be brought by 1 or more representative persons as a class action." 28 U.S.C. §
6  1332(d)(1)(B).  A "mass action" is a civil action in which "monetary relief claims of 100 or
7  more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve
8  common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs
9  whose claims in a mass action satisfy the jurisdictional requirements under subsection (a)."
10 28 U.S.C. § 1332(d)(11)(B)(I).

11      This action is not a "class action" because it was not filed under Rule 23, Fed. R. Civ.
12 P. or a similar state rule or statute.  This action was filed under the CFA and the Consent
13 Judgment.  Clearly the Consent Judgment is not a similar rule or statute.  Nor does the CFA
14 qualify as a similar statute.  It does not require class certification, adequate representation,
15 notice procedures, or contain opt out provisions as Rule 23 requires.  See Comcast, 705 F.
16 Supp. 2d at 453-54 (finding that West Virginia's statute was similar to Rule 23 because it
17 required all the important protections of Rule 23). It also authorizes the Attorney General to
18 sue on behalf of the state, not as a class representative.  § 44-1528(A).

19      Nor is the action a mass action.  The State is the real party in interest and thus the
20 numerosity requirement of 100 or more plaintiffs is not met.  Moreover, the State is the only
21 named party.  Plaintiffs in a mass action must be individually named with their own direct
22 claims.  See Missouri, 686 F. Supp. 2d at 947; In re TFT-LCD, 2011 WL 560593 at * 8.

23      Accordingly, we find that we lack jurisdiction under CAFA.

### III. Federal Question Jurisdiction

25      Defendants' second basis for removal is federal question jurisdiction.  Defendants
26 argue that the complaint raises a disputed and substantial federal issue because it raises
27 questions under the federal Home Affordable Mortgage Program ("HAMP").  The State
28 contends that its claims do not depend on an interpretation of HAMP but rather whether

1 defendants misled consumers regarding their mortgage modification program or violated the
2 Consent Judgment.

3 A case "arises under" federal law if the well-pleaded complaint establishes that federal
4 law creates the cause of action or if "plaintiff's right to relief under state law requires
5 resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr.
6 Laborers Vacation Trust of S. Cal., 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856 (1983). A state
7 cause of action can invoke federal question jurisdiction only if it "necessarily raise[s] a stated
8 federal issue, actually disputed and substantial, which a federal forum may entertain without
9 disturbing any congressionally approved balance of federal and state judicial
10 responsibilities." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314,
11 125 S.Ct. 2363, 2368 (2005). This, however, encompasses only a "small category" of cases.
12 Empire HealthChoice Assurance v. McVeigh, 547 U.S. 677, 699, 126 S.Ct. 2121, 2136
13 (2006).

14 Here, the well pleaded Complaint does not raise a federal question. It only asserts
15 violations of the Consent Judgment and the Arizona Consumer Fraud Act. Nor does it raise
16 a state law claim that necessarily turns on the interpretation of federal law. While the
17 Complaint may refer to HAMP and allege certain actions were not in conformity with
18 HAMP, those issues are not "necessary" to resolving the State's claims. The focus of the
19 Complaint is on defendants' violations of the Consent Judgment and the CFA. The Consent
20 Judgment itself established many of the same requirements as HAMP. A violation of the
21 Consent Judgment, therefore, does not depend on a violation of HAMP. Moreover,
22 defendants' state liability under the CFA would not attach because of a failure to comply with
23 HAMP or provide a loan modification per se, but rather by virtue of any misrepresentations
24 or concealment with regard to requirements to obtain a loan modification. The State does
25 not need to prove defendants violated HAMP to prove that defendants made representations
26 that had a "tendency and capacity to convey misleading impressions to consumers." See
27 Madsen v. W. Am. Mortg. Co., 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (Ct. App. 1985)
28 (discussing the test for proving fraud under the CFA).

This case is much like Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229 (1986), where the Court rejected an argument that simple negligence could "arise under" federal law merely because defendants' liability was premised on a violation of a federal regulation. Id. at 805-806. Even if a part of the State's claims alleges violations of HAMP, that by itself is not enough to invoke 'arising under' jurisdiction. See also In re Lifelock, Inc., Marketing and Sales, No. 09-1977-PHX-MHM, 2009 WL 2222711, *5-6 (D. Ariz. July 24, 2009) (granting a motion to remand because state consumer protection claims did not raise an actual and disputed federal question even if the claim was premised on a violation of the Fair Credit Reporting Act). We lack federal question jurisdiction.

## IV. Bankruptcy Jurisdiction

Defendants final basis for removal is bankruptcy jurisdiction. Defendants argue that this action is "related to" one or more cases filed under the Bankruptcy Code. 28 U.S.C. §§ 1334(b), 1452. Defendants point out that at least 117 Arizona borrowers with pending bankruptcies have complained about defendants making them "likely members" of the borrowers at issue. Response at 15. Additionally, defendants state that two of the eight borrowers highlighted in the Complaint filed for bankruptcy. Id. The State, however, asserts that this action is exempt from removal because it is "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." § 1452(a).

In City & County of San Francisco v. PG&E Corp., the Ninth Circuit ordered the remand of a lawsuit filed by the California State Attorney General under its counterpart to the CFA because it fell within the police and regulatory exception to bankruptcy jurisdiction. 433 F.3d at 1118. Satisfaction of either the "pecuniary purpose" test or the "public policy" test exempts an action from removal. Id. at 1124. Neither party disputes that the State's claims for injunctive relief or civil penalties properly fall within the exception. Defendants only rely on the restitution claims.

In PG&E, the court held that restitution claims clearly satisfied both the "pecuniary purpose" test and the "public policy" test. Id.; see also Portfolio, 686 F. Supp. 2d at 947-48 (holding that a state action alleging deceptive and unfair collection practices by debt

1  collection companies fell within the police or regulatory power exception to removal despite
2  the state having sought restitution).  Here, the State is not acting as a creditor of any
3  consumer in bankruptcy.  Moreover, the action satisfies the public policy test because
4  seeking restitution "will benefit the public welfare by penalizing past unlawful conduct and
5  deterring future wrongdoing."  Id.  Just because some private individuals may benefit from
6  restitution, does not make their repayment the primary objective of the suit.  Id. at 1126.
7  Finally, the State's right of action under the CFA is not part of the bankruptcy estate under
8  § 541, and even if it was, § 541 would "not obviate the law enforcement exception to
9  removal."  Id. at 1127.  Because this action satisfies both tests removal is improper.

## V. Attorneys' Fees

Finally, the State seeks an award of attorneys' fees and costs incurred as a result of wrongful removal. 28 U.S.C. § 1447(c).  The State claims that defendants had no objectively reasonable basis for removal.  It relies on a recent rejection of a similar request by the Northern District of Illinois.  We have discretion to award fees where "the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 711 (2003).  Although close, we cannot say that defendants' effort to remove was without any plausible basis.  We therefore, deny the State's motion for attorneys' fees and costs.

## VI. CONCLUSION

Accordingly, **IT IS ORDERED GRANTING** the State's motion to remand (doc. 16). The action is hereby **ORDERED REMANDED** to the Superior Court of Arizona in Maricopa County.

DATED this 18th day of March, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge